UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
TRUSTEES OF THE LOCAL 7 TILE :
INDUSTRY WELFARE FUND, TRUSTEES OF :
THE LOCAL 7 TILE INDUSTRY RETIREE :
WELFARE FUND, TRUSTEES OF THE TILE :
LAYERS LOCAL UNION 52 PENSION FUND, :
TRUSTEES OF THE LOCAL 7 TILE :
INDUSTRY VACATION FUND, TRUSTEES :
OF THE LOCAL 7 TILE INDUSTRY :
SUPPLEMENTAL FUND, TRUSTEES OF THE :
LOCAL 7 TILE INDUSTRY ANNUITY FUND, :
TRUSTEES OF THE LOCAL 7 TILE :
INDUSTRY TRAINING FUND, TRUSTEES OF :
THE LOCAL 7 TILE INDUSTRY :
PROMOTIONAL FUND, TRUSTEES OF THE :
LOCAL 7 TILE INDUSTRY BUILDING FUND, :
TRUSTEES OF THE LOCAL 7 TILE
INDUSTRY DEFENSE FUND, TRUSTEES OF
THE LOCAL 7 TILE INDUSTRY LOCAL
POLITICAL ACTION COMMITTEE,
TRUSTEES OF THE BRICKLAYERS &
TROWEL TRADES INTERNATIONAL
PENSION FUND, THE INTERNATIONAL
MASONRY INSTITUTE, and THE TRUSTEES
OF THE BRICKLAYERS AND ALLIED
CRAFTERS POLITICAL ACTION
COMMITTEE,

      Plaintiffs,

  -against-

ALL FLOORING SOLUTIONS LLC and
UNIVERSAL STONE AND FLOORING INC.,

      Defendants.
-------------------------------------------------------------- x

**REPORT AND RECOMMENDATION**

19-CV-6576 (LDH) (PK)

**Peggy Kuo, United States Magistrate Judge:**

  Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, Trustees of the Local 7 Tile

Industry Retiree Welfare Fund, Trustees of the Tile Layers Local Union 52 Pension Fund, Trustees

of the Local 7 Tile Industry Vacation Fund, Trustees of the Local 7 Tile Industry Supplemental Fund,

Trustees of the Local 7 Tile Industry Annuity Fund, Trustees of the Local 7 Tile Industry Training

1

Fund (collectively, "Local ERISA Funds"), Trustees of the Bricklayers & Trowel Trades International Pension Fund, the International Masonry Institute, (collectively, "International ERISA Funds"), Trustees of the Local 7 Tile Industry Local Political Action Committee, the Trustees of the Bricklayers and Allied Crafters Political Action Committee (collectively, the "Non-ERISA Funds"), Trustees of the Local 7 Tile Industry Promotional Fund, Trustees of the Local 7 Tile Industry Building Fund, and Trustees of the Local 7 Tile Industry Defense Fund (collectively, "Industry Funds," and collectively with the Local ERISA Funds, International ERISA Funds, and non-ERISA funds, the "Funds" or "Plaintiffs"), brought this action against Defendants All Flooring Solutions LLC ("All Flooring") and Universal Stone and Flooring Inc. ("Universal Stone," and collectively, "Defendants") alleging alter-ego liability for delinquent contributions and violations of a collective bargaining agreement. (*See* "Am. Compl.," Dkt. 12, ¶¶ 40-50.) Plaintiffs have filed a Motion for Default Judgment. ("Motion," Dkt. 17; "Memo of Law," Dkt. 20.)

The Honorable LeShann DeArcy Hall referred the Motion to the undersigned for a report and recommendation. For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted.

## BACKGROUND

### I. Factual Background

The following facts are taken from the Amended Complaint, unless otherwise stated, and are assumed to be true for purposes of this motion.

The Local ERISA Funds and International ERISA Funds are employer and employee trustees of multi-employer benefit plans under the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA"). (*See* Am. Compl. ¶¶ 4-5.) The Non-ERISA Funds are labor organizations under the LMRA within the meaning of 29 U.S.C. § 185. (*Id.* ¶ 6.) The Local 7 Tile Industry Welfare Fund is the designated collection agent for the non-party International Union

of Bricklayers and Allied Craftworkers, Local Union No. 7 (the "Union") and the Plaintiffs.  (*Id.* ¶ 6.)

Defendants All Flooring and Universal Stone are New York corporations.  (*Id.* ¶¶ 7-8.)  They are both employers under ERISA and employers in an industry affecting commerce under the LMRA.  (*Id.* ¶¶ 7-8.)

All Flooring was at all relevant times a party to a collective bargaining agreement (the "CBA") between the Union and the Greater New York and New Jersey Tile Contractors Association, Inc.  (*Id.* ¶ 9; Declaration of William Hill, "Hill Decl.," Dkt. 18 ¶ 7; *see also* Exhibit A to the Hill Decl., CBA, Dkt. 18-1.)  The CBA was effective from June 2, 2013 through June 2, 2017, and automatically renewed for yearly terms thereafter if neither party gave 90 days' written notice of their intent to terminate the agreement.  (CBA, Art. XXX(1) and (2); Independent Employer Agm't § 2, CBA at 38.)[1]  Neither the Funds nor All Flooring provided written notice of its intent to terminate the Agreement.  (Hill Decl. ¶ 9.)

Under the CBA, employers agreed to be bound by any trust agreements that regulate the Funds.  (*Id.* ¶ 16; CBA Art. IX § 3(Q).)  The CBA required All Flooring to make specified hourly contributions to the Funds in connection with all work performed in the trade and geographical jurisdiction of the Union.  (Am. Compl. ¶ 10; Hill Decl. ¶ 11; CBA Art. IX § 3, 5.)  The Funds establish those hourly contribution rates and have the right to audit the books and records of signatory employers, as well as those "of any affiliate, subsidiary, alter ego, joint venture or other related company…" to ensure compliance with the CBA.  (CBA Art. IX § 3(G).)

In April 2018, the Funds conducted a payroll audit of All Flooring's books and records for the period from August 24, 2015 through December 31, 2016 (the "Audit").  (Am. Compl. ¶ 17.)  All Flooring did not dispute the Audit findings but did not pay the amount owed according to the Audit.

---

[1] In their Motion papers, Plaintiffs also included a new collective bargaining agreement effective beginning in 2017 (the "2017 CBA").  (*See* Exhibit B to the Hill Decl., Dkt. 18-2.)  Plaintiffs do not contend that Defendants signed the 2017 CBA.

3

(*Id.* ¶ 18; Hill Decl. ¶ 21.) The Funds' auditors revised the audit on March 12, 2019 ("Revised Audit") to update the interest that had accrued since the Audit. (Am. Compl. ¶ 19.) After the Funds issued the Revised Audit, All Flooring ceased operations and stopped communicating with the Funds. (*Id.* ¶ 20.) All Flooring's owner, Nicola Benigno, learned of the amount owed under the Revised Audit and began operating the same business under a different name, Universal Stone. (*Id.* ¶ 21.) Plaintiffs allege that he did so in order to evade his obligation to the Funds. (*Id.* ¶ 23.)

Both All Flooring and Universal Stone are owned and operated by Nicola Benigno. (*Id.* ¶¶ 23, 26.) Both companies install residential and commercial flooring in construction projects in and around New York City. (*Id.* ¶¶ 31, 34.) They share the same principal place of business, located in the same office at 67 Rome Street, Farmingdale, New York. (*Id.* ¶ 27; Dkt. 23.) They use the same phone number, where a receptionist answered the phone "Universal," but acknowledged that it was also the same number for All Flooring. (*Id.* ¶¶ 28-29.) They use the same accountant. (*Id.* ¶ 30.) Since 2015, both companies have shared the same workers' compensation policies, and since 2016, they have shared disability benefits coverage and paid family leave insurance policies. (*Id.* ¶¶ 32-33.)

On January 8, 2019, Plaintiffs filed a complaint against All Flooring in a case captioned *Trs. of the Local 7 Tile Ind. Welfare Fund, et al. v. All Flooring Solutions, LLC*, 19-cv-00126 (ENV)(RLM) (E.D.N.Y.), seeking payment of the delinquent contributions, interest, liquidated damages, attorneys' fees, and costs. (*See id.* ¶ 22.) Plaintiffs filed an amended complaint on June 18, 2019, and on March 24, 2020, obtained a default judgment against All Flooring in that case. The Court awarded Plaintiffs

> (i) $427,706.58 in compensatory damages for unpaid contributions under ERISA and the LMRA; (ii) a daily interest rate of $105.50 from April 27, 2016 until the entry of judgment; (iii) $141.16 in statutory damages under ERISA; (iv) $3,200.00 in audit costs; (v) $11,536.35 in attorneys fees; (vi) $498.33 in costs; and (vii) post-judgment interest pursuant to 28 U.S.C. § 1961

for a total of $593,630.92 plus post-judgment interest. ("March 24, 2020 Judgment," Dkt. 45 in 19-CV-00126 (ENV)(RLM).)

All Flooring has not paid the March 24, 2020 Judgment and has failed to make its books and records available for another audit for the period covering January 1, 2017 through May 12, 2020 ("New Audit"). (Hill Decl. ¶¶ 21-22.)

## II.     Procedural Background

Plaintiffs filed the Complaint on November 21, 2019. (Dkt. 1.) Plaintiffs served a copy of the Summons and Complaint on Defendants on November 22, 2019 through the New York Secretary of State. (Dkts. 6, 7.) Defendants failed to appear, and Plaintiffs requested a certificate of default (Dkt. 8), which the Clerk granted on January 17, 2020 (Dkt. 9). After the March 24, 2020 Judgment was entered, Plaintiffs filed an Amended Complaint in this matter on March 25, 2020 (Dkt. 12), updating the factual allegations to include information about that judgment. (*See* Am. Compl. ¶ 22.)

Plaintiffs mailed a copy of the Amended Complaint to Defendants on April 1, 2020 (Dkt. 13), and Defendants again failed to appear. Plaintiffs requested a certificate of default for failure to answer the Amended Complaint (Dkt. 14), which the Clerk granted on April 28, 2020 (Dkt. 15). Plaintiffs then filed the Motion.

## DISCUSSION

## I.     Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A plaintiff must take several steps before the court will grant default judgment. The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013

WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations and alterations omitted). The plaintiff must establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.

The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020). The Plaintiff must similarly establish entitlement to injunctive relief. *Dollar Tree Stores, Inc. v. Serraty*, No. 16-CV-6818 (DRH)(AYS), 2018 WL 1180165, at *12 (E.D.N.Y. Feb. 14, 2018), *R&R adopted*, 2018 WL 1175159 (E.D.N.Y. Mar. 6, 2018). A court may "issue an injunction on a motion for default judgment upon a showing by the moving party that it is entitled to injunctive relief under the applicable statute, and that it meets the prerequisites for the issuance of an injunction." *United States v. Thomas*, No. 18-CV-1104 (PKC)(LB), 2019 WL 121678, at *6 (E.D.N.Y. Jan. 7, 2019) (quoting *Kennedy v. Medgen, Inc.*, No. 14-CV-5843 (ADS) (AYS), 2016 WL 6585812, at *5 (E.D.N.Y. Apr. 19, 2016)).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established…." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R*

*adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II. Jurisdiction

### A. Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiffs' ERISA claim pursuant to 29 U.S.C. § 1132(e)-(f) and 28 U.S.C. § 1331. The Court has original jurisdiction over Plaintiffs' allegations relating to breach of labor contract pursuant to 29 U.S.C. § 185(a) and 28 U.S.C. § 1331.

### B. Service on the Defendants

Plaintiffs properly served All Flooring by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State. *See* N.Y. LLC Law § 303; Fed R. Civ. P. 4(h)(1)(B). (Dkt. 6.) They also properly served Universal Stone by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B). (Dkt. 7.) Because Defendants were in default when the Amended Complaint was filed, and because the Amended Complaint did not assert a new claim for relief, Plaintiffs were not required to serve Defendants with the Amended Complaint. Fed. R. Civ. P 5(a)(2); *see also Allstate Ins. Co. v. Yadgarov*, No. 11-CV-6187 (PKC)(VMS), 2014 WL 860019, at *6 (E.D.N.Y. Mar. 5, 2014). Plaintiffs did send a copy of the Amended Complaint to Defendants at their last known business address. (Dkt. 13.)

### C. Personal Jurisdiction

"Serving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A).) New York State has general jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG) (PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).

7

Because Defendants are New York corporations, the Court has personal jurisdiction over them.

**III.     Procedural Compliance with Local Civil Rules 7.1 and 55.2**

Plaintiff filed the following documents in support of the Motion for Default Judgment: a copy of the Amended Complaint (Dkt. 19-4), Affidavits in support (Dkt. 18, 19), the Certificate of Default (Dkt 19-7), a Memorandum of Law (Dkt. 20), a statement for legal fees (Dkt. 19-8), a proposed judgment (Dkt. 19-9), and an affidavit of service (Dkt. 22).  These documents comply with Local Civil Rules 7.1 and 55.2.

**IV.     Liability**

   **A.     Alter Ego Liability**

Plaintiffs allege that Universal Stone is the alter ego of All Flooring.  "The alter ego doctrine is designed to defeat attempts to avoid a company's union obligations through a sham transaction or technical change in operations." *Local One Amalgamated Lithographers of Am. v. Stearns & Beale, Inc.,* 812 F.2d 763, 772 (2d Cir. 1987).  It "provides an analytical hook to bind a non-signatory to a collective bargaining agreement." *Truck Drivers Local Union No. 807, I.B.T. v. Reg'l Imp. & Exp. Trucking Co.,* 944 F.2d 1037, 1046 (2d Cir. 1991).  "Determining that an entity is an alter ego 'signifies that, for all relevant purposes, the non-signatory is legally equivalent to the signatory and is itself a party to the [collective bargaining agreement].'" *Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S.,* 629 F.3d 282, 288 (2d Cir. 2010) (quoting *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL–CIO v. Custom Air Sys., Inc.,* 357 F.3d 266, 268 (2d Cir. 2004) (alteration in original)).

The alter ego test is "flexible … while recognizing that the following factors are important: whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *UNITE HERE,* 629 F.3d at 288 (quoting *Goodman Piping Prods., Inc. v. NLRB,* 741 F.2d 10, 11 (2d Cir. 1984) (quotations omitted)).

Plaintiffs plead sufficient facts to establish the alter ego status of All Flooring and Universal Stone. Both companies are owned and operated by Nicola Benigno. (Am. Compl. ¶ 26.) They have the same business purpose of installing residential and commercial flooring in construction projects in the New York City metropolitan area. (*Id.* ¶¶ 31, 34.) They have substantially identical operations, sharing the same office at the same address (*Id.* ¶ 27; Dkt. 23), along with the same phone number (*Id.* ¶¶ 28-29), receptionist, (*Id.* ¶ 29), workers' compensation policies (*Id.* ¶ 32), disability benefits coverage (*Id.* ¶ 33), paid family leave insurance policies (*Id.* ¶ 33), and accountant (*Id.* ¶ 30). Because Universal Stone is operating under substantially the same management, with the same business purpose as All Flooring, and without any meaningful distinction in their operations, the undersigned respectfully recommends a finding that Universal Stone is an alter ego of All Flooring.[2]

### B. Single Employer

The Amended Complaint also asserts that Defendants are a single employer; however, Plaintiffs relegate their argument regarding single employer liability to a brief footnote in their Memorandum of Law, stating, "The analysis for alter ego and single employer status largely overlaps. Accordingly, the Funds focus this motion on their alter ego claim to avoid redundant analysis." (Memo of Law at 7, n. 1.) While there is overlap, "the two doctrines are 'conceptually distinct,'" and "the alter ego test is notably different than the "four-factor" single employer test." *See Lihli Fashions Corp. v. N.L.R.B.*, 80 F.3d 743, 748 (2d Cir. 1996), *as amended* (May 9, 1996) (citations omitted). Given that the alter ego and single employer doctrines have "the same binding effect on a non-signatory" to a collective bargaining agreement, *Lihli Fashions Corp.*, 80 F.3d at 748 (quoting *Truck Drivers*, 944 F.2d at 1046), the undersigned likewise declines to engage in redundant analysis and considers that Plaintiffs have abandoned the single employer arguments for purposes of the Motion. *See Tummino v. Hamburg*,

---

[2] Plaintiffs also allege that Defendants had substantially identical equipment and customers, without providing specific supporting facts. These additional conclusory allegations were not considered, but are also not necessary, in reaching the conclusion that Defendants are alter egos of each other.

9

936 F. Supp. 2d 162, 193 (E.D.N.Y. 2013) (courts do not need to consider arguments "advanced in a single footnote.")

### C. Joint and Several Liability for the March 24, 2020 Judgment Against All Flooring

Plaintiffs contend that Universal Stone is jointly and severally liable for the March 24, 2020 Judgment entered against All Flooring. (Am. Compl. ¶ 22, 39, 50.) One alter ego is subject to judgments entered against the other. *See, e.g.*, *Trustees of the Local 7 Tile Indus. Welfare Fund v. Richard's Improvement Bldg. Inc.*, No. 15-CV-3898 (JS)(AKT), 2016 WL 6110455, at *9 (E.D.N.Y. Aug. 1, 2016), *R&R adopted*, 2016 WL 4764909 (E.D.N.Y. Sept. 12, 2016) (citing cases). The undersigned therefore finds that Universal Stone is jointly and severally liable for the March 24, 2020 Judgment against All Flooring.

### D. Requirement to Submit to a New Audit

Plaintiffs seek an order pursuant to ERISA and the LMRA that Defendants must submit to a New Audit of their books and records covering the period of January 1, 2017 through the present. (Am. Compl. at 10; Memo of Law at 18.) "If two companies are deemed alter egos of each other, then each is bound by the collective bargaining agreements signed by the other." *Lihli Fashions Corp.*, 80 F.3d at 748 (citing cases). All Flooring signed the CBA and is bound by it. (Am. Compl. ¶ 9; Hill Decl. ¶ 7.)[3] Because Universal Stone is the alter ego of All Flooring, it is bound to the CBA as well.

#### 1. *ERISA Liability*

Plan fiduciaries may bring a civil action for ERISA violations and for violations of a collective

---

[3] In the papers attached to the Motion, Plaintiffs refer to two collective bargaining agreements: one that was effective from June 2, 2013 through June 2, 2017, and a subsequent agreement effective beginning June 2017. (*See* Hill Decl. ¶ 10; *see also* CBA *and* Dkt. 18-2.) There is no allegation or evidence that Defendants ever signed the June 2017 CBA. The CBA was effective from June 2, 2013 through June 2, 2017 and automatically renewed unless terminated, and neither the Funds nor All Flooring terminated the CBA. (CBA, Art. XXX(1) and (2); Independent Employer Agm't § 2, CBA at 38; Hill Decl. ¶ 9.) The CBA signed in 2013 is therefore the operative document here. The same finding was made in the prior action against All Flooring. *See Trs. of Local 7 Tile Indus. Welfare Fund v. All Flooring Sols., LLC*, No. 19-CV-126 (ENV)(RLM), 2020 U.S. Dist. LEXIS 25506, at *10 (E.D.N.Y. Feb. 12, 2020), *R&R adopted* March 23, 2020. Even if the 2017 agreement were to control, its relevant material terms are the same as the earlier CBA. (*Compare* CBA *with* Dkt. 18-2.)

bargaining agreement. 29 U.S.C. § 1132(a)(3). ERISA applies to "any employee benefit plan if it is established or maintained [] by any employer engaged in commerce or in any industry affecting commerce; or [] by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a). "'Commerce' means trade, traffic, commerce, transportation, or communication between any State and any place outside thereof." 29 U.S.C. § 1002(11). "Industry affecting commerce" includes businesses or industries "in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce, and includes any activity or industry 'affecting commerce' within the meaning of the [LMRA]." 29 U.S.C. § 1002(12); *see Annuity, Pension, Welfare, Training & Labor Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers, Local 14-14B, AFL-CIO by Christian v. Coastal Envtl. Grp. Inc.*, 18-CV-5773 (AMD)(ST), 2019 WL 4603805, at *6 (E.D.N.Y. Sept. 5, 2019), *R&R adopted*, 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019) (construction industry has interstate jurisdictional nexus). An employer is "any person acting directly as an employer … in relation to an employee benefit plan." 29 U.S.C. § 1002(5). An "employee benefit plan" is "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both…" 29 U.S.C. § 1002(3). A plan fiduciary includes persons with "any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

Here, the Local ERISA Funds and International ERISA Funds are "employee benefit plans" and "multiemployer plans" under 29 U.S.C. § 1002(3) and 29 U.S.C. § 1002(37). (Am. Compl. ¶¶ 4-5.) The Trustees of the Local ERISA Funds and International ERISA Funds are fiduciaries as defined by 29 U.S.C. § 1002(21). (*Id.* ¶¶ 4-5.) Defendants are employers subject to ERISA requirements. (*Id.* ¶¶ 7-8.) The CBA requires All Flooring to make certain contributions to the Funds (*Id.* ¶ 10; Hill Decl. ¶¶ 11, 16; CBA Art. IX §§ 3, 5.), and to submit to an audit by the Funds. (*Id.* ¶¶ 12-14; Hill Decl. ¶¶ 12, 17, 19; CBA Art. IX § 3(G).)

The Local ERISA Funds and the International ERISA Funds have therefore established that Defendants are bound by the CBA and must permit and cooperate in an audit of their records.

### 2. *LMRA Liability*

The LMRA grants "a federal cause of action for 'violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce.'" *Annuity, Welfare, & Apprenticeship Skill Improvement & Safety Funds of the Int' Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Getty Contracting, LLC*, No. 18-CV-1450 (CBA), 2018 WL 7076168, at *3 (E.D.N.Y. Oct. 5, 2018), *R&R adopted*, 2018 WL 7076162 (E.D.N.Y. Dec. 12, 2018) (quoting 29 U.S.C. § 185(a)). "An employer's breach of a collective bargaining agreement and/or trust agreement, by failing to comply with an audit request, is actionable under the LMRA." *Getty Contracting*, 2018 WL 7076168 at *3. (collecting cases).

The same facts that give rise to ERISA liability also establish that the CBA is a contract between an employer and a labor organization under the LMRA. Because the CBA requires All Flooring to submit to an audit of its records, both All Flooring and its alter ego Universal Stone must permit and cooperate in an audit of their records.

## V. **Relief Sought by Plaintiffs**

In the Amended Complaint, Plaintiffs request that the Court (1) "[a]ward Plaintiffs a judgment against Defendants holding Defendants joint and severally liable for the [March 24, 2020] Judgment on account of their alter ego and/or single employer status, plus post-Judgment interest and Plaintiffs attorneys' fees and costs incurred in this action," (2) order Defendants "to submit to an audit of Defendants' books and records covering the period of January 1, 2017 through the present," (3) award Plaintiffs a judgment against Defendants based on any delinquent contributions revealed by this new audit, plus interest, fees and costs, and (4) award "such other and further relief as the Court may deem

12

just and proper." (Am. Compl at 10-11.)[4]

### A. Judgment Holding Defendants Liable as Alter Egos for March 24, 2020 Judgment

The March 24, 2020 Judgment against All Flooring awarded Plaintiffs $593,630.92 plus post-judgment interest. As an alter ego of All Flooring, Universal Stone is jointly and severally liable with All Flooring for the March 24, 2020 Judgment. Thus, it is appropriate to enter a judgment holding the two Defendants jointly and severally liable for the amount awarded in the March 24, 2020 Judgment, and the undersigned respectfully recommends that such a judgment be entered.

### B. Injunctive Relief Related to a New Audit

"In a successful action to enforce ERISA provisions, an ERISA plan may recover 'such other legal or equitable relief as the court deems appropriate.'" *Local 355 United Serv. Workers Union, Int'l Union of Journeymen & Allied Trades v. Aircon Enterprises, Inc.*, No. 18-CV-1849 (LDH)(LB), 2018 WL 9945700, at *4 (E.D.N.Y. Nov. 28, 2018) (quoting 29 U.S.C. § 1332(g)(2)(E)). "Such relief includes injunctions, which may be employed to compel a defendant to comply with an audit pursuant to a CBA." *Aircon Enterprises, Inc.*, 2018 WL 9945700, at *4 (citing *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Cooperation, Pension and Welfare Funds v. Tri-State Acoustics Corp.*, 13-CV-05558, 2014 WL 4537481, at *9 (E.D.N.Y. Sept. 11, 2014)).

The LMRA allows for the same relief. *See Getty Contracting*, 2018 WL 7076168, at *3. The CBA gives the Funds the right to audit the books and records of signatory employers and their alter egos. (CBA Art. IX § 3(G).) Defendants have failed to comply with Plaintiffs' audit demands. The

---

[4] In the Motion, Plaintiffs seek somewhat different relief. They request an order (1) "[d]eclaring that Universal Stone is the alter ego of Defendant All Flooring"; (2) "[a]warding a judgment in favor of Plaintiffs and against Defendants, jointly and severally, in the amount of $609,364.72"; (3) ordering Defendants to submit to an audit for benefit contributions for the period of January 1, 2017 to the present; (4) granting Plaintiffs leave to seek recovery of any further delinquencies identified in the audit 30 days after the audit; (5) awarding post-judgment interest; and (6) such other relief as the Court deems just and proper. (*See* Memo of Law at 18; Dkt. 19-9 at 2.) Because the complaint is required to contain "a demand for the relief sought," Fed. R. Civ. P. 8(a)(3), the undersigned considers the relief sought in the Amended Complaint rather than that sought in the Motion.

undersigned therefore respectfully recommends that an injunction be granted directing Defendants to submit to a New Audit for the period from January 1, 2017, and to produce the relevant records as required under the CBA.

### C. Damages Related to the New Audit

Plaintiffs also request a judgment for unpaid contributions owed, liquidated damages, interest, attorneys' fees and auditors' fees, court costs and disbursements for delinquent payments based on the results of the New Audit. The CBA provides for such remedies. (CBA Art. IX § 3(L).) In actions to recover unpaid contributions, ERISA provides for similar recoveries. *See* 29 U.S.C. § 1132(g)(2).

However, because the New Audit has not yet been conducted, this amount is unknown. Accordingly, the undersigned respectfully recommends that Plaintiffs be granted leave to submit further evidence to the court regarding damages identified as a result of the New Audit within 30 days of the completion of that audit. (*See* Memo of Law at 18; Dkt. 19-9 at 2.) *See also, e.g.*, *LaBarbera v. Bevet Props.*, 2004 U.S. Dist. LEXIS 28898, at *12-13 (E.D.N.Y. Mar. 22, 2004), *R&R adopted* May 10, 2004 (recommending Plaintiff be granted leave to submit additional information regarding damages 30 days after completion of an audit).

### D. Attorneys' Fees and Costs

ERISA provides for a mandatory award of reasonable attorneys' fees and costs if a plan is awarded judgment for delinquent contributions of an employer. 29 U.S.C. § 1132(g)(2). The CBA here also provides for attorneys' fees and costs incurred in collecting delinquent contributions. (Hill Decl. ¶ 15; CBA Art. IX § 3(L).)

In order to justify an award of attorneys' fees, Plaintiffs must provide contemporaneous time records. *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986). Plaintiffs have done so. ("Fee Records," Dkt. 19-8.) The attorneys' fees and costs must also be "reasonable." *See Riley v. City of New York*, No. 10-CV-2513 (MKB), 2015 WL 9592518, at *1 (E.D.N.Y. Dec. 31, 2015). "[T]he lodestar—

14

the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citations omitted). To calculate the lodestar, the Court determines a reasonable hourly rate and a reasonable number of hours. *See Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 203 (E.D.N.Y. 2006); *see also Scharff v. Cty. of Nassau*, 10-CV-4208 (DRH)(GRB), 2016 WL 3166848, at *3 (E.D.N.Y. May 20, 2016), *R&R adopted*, 2016 WL 3172798 (E.D.N.Y. June 6, 2016) (citations omitted). "District courts have broad discretion to determine both the reasonable number of compensable hours and the reasonable hourly rate." *Brady*, 455 F. Supp. 2d at 203. The party applying for fees must support the hourly rates it claims with evidence, for example, of counsel's experience and prevailing market rates. *See id.* at 204; *Riley*, 2015 WL 9592518, at *2.

Plaintiffs seek $15,189.00 in attorneys' fees and $544.80 in costs. (Memo of Law at 24; Fee Records.)

    1.    <u>Hourly Rate</u>

To determine a reasonable hourly rate, courts consider the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (citations and internal quotations omitted). The "community" is the "district in which the reviewing court sits." *Scharff*, 2016 WL 3166848, at *4 (*quoting Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011)). "The reasonable hourly rate is the rate a paying client would be willing to pay ... bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The Court must also "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* at 190 (emphasis in original). Those factors

15

include the attorney's experience and expertise. *See Brady*, 455 F. Supp. 2d at 204; *Chen v. Cty. of Suffolk*, 927 F. Supp. 2d 58, 71 (E.D.N.Y. 2013). The fee applicant has the burden of justifying the requested rate as reasonable. *See Scharff*, 2016 WL 3166848, at *4.

In recent years, "[h]ourly rates in the Eastern District of New York generally range from $300.00 to $450.00 for partners, $200.00 to $325.00 for senior associates, $100.00 to $200.00 for junior associates and $85.00 to $100.00 for paralegals." *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Cooperation Funds v. Tiki Indus., Inc.*, No. 19-CV-3295 (SJF)(ARL), 2021 WL 242266, at *6 (E.D.N.Y. Jan. 25, 2021) (quoting *CIT Bank, N.A. v. Mitchell*, No. 17-CV-1969, 2021 WL 54081, at *6 (E.D.N.Y. Jan. 6, 2021) (alteration added).

Plaintiffs seek fees for the time of attorneys John Harras and Marlie Blaise, along with unnamed legal assistants, all of the law firm Virginia & Ambinder. Harras graduated from law school in January 2015 and has experience in ERISA cases, including as lead counsel. ("Harras Aff.," Dkt. 19 ¶ 20.) Harras worked on this matter as an associate and, beginning in January 2020, as a partner. Harras's affidavit and the attached time records are inconsistent on the date of Harras's promotion to partner and the rates he billed. In his affidavit, Harras states that his time was billed as an associate at a rate of $225.00 per hour from March 20, 2019 to January 20, 2020, when he was promoted to partner. (*Id.* ¶ 20.) According to his affidavit, as a partner his time was billed at a rate of $300.00 per hour from January 20, 2020 through February 20, 2020, after which his hourly rate increased to $350.00 per hour. (*Id.*) But the attached Fee Records show that he billed at a rate of $265.00 as an associate and that he began billing as a partner at an hourly rate of $350.00 in early January 2020. (Fee Records at 2-6.) There is no explanation in the records for this discrepancy.

Harras' requested rates have recently been reduced to $300.00 as a partner and $225.00 as an associate in other cases in this District. *See Trustees of Local 7 Tile Indus. Welfare Fund v. AM Tile Specialty Constr.*, No. 19-CV-1809 (RPK)(SJB), 2020 WL 7034025, at *13 (E.D.N.Y. Sept. 23, 2020), *R&R*

16

*adopted*, 2020 WL 7021646 (E.D.N.Y. Nov. 30, 2020); *see also All Flooring Sols.*, 2020 U.S. Dist. LEXIS 25506, at *37 (recommending $225 rate for Harras as an associate). The undersigned therefore finds that the lower hourly rates for the time frames stated in Harras's affidavit are reasonable: $225.00 per hour for his time as an associate through January 20, 2020, and $300.00 for time spent on this matter as a partner after January 21, 2020.

Blaise is a 2018 law school graduate and an associate at Virginia & Ambinder whose primary practice area is ERISA litigation. (Harris Aff. ¶ 21.) She billed at a rate of $265.00 for work in this matter. (*Id.*; *see also* Fee Records at 5-6.) Blaise's rate has been reduced from the requested rates in recent cases. *See, e.g., Finkel v. Allstate Elec. Corp.*, No. 19-CV-6260 (ARR)(RLM), 2020 WL 7249438, at *3 (E.D.N.Y. Oct. 1, 2020), *R&R adopted*, 2020 WL 6390142 (E.D.N.Y. Nov. 2, 2020) (reducing Blaise's rate to $250.00 per hour; *All Flooring Sols.*, 2020 U.S. Dist. LEXIS 25506, at *37 (reducing Blaise's rate to $150.00 per hour). Blaise was only a second-year associate at the time she did work in this case. The undersigned finds that the reasonable hourly rate for Blaise's time is $150.00.

Plaintiffs also seek fees for the time spent on this matter by legal assistants at a rate of $115.00 per hour. Plaintiffs do not provide any names or experience levels for their legal assistants. Courts in this district have reduced the legal rates for Virginia & Ambinder legal assistants where their backgrounds are not described. *See Finkel*, 2020 WL 7249438, at *4 (citing *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship & Labor-Mgmt. Cooperation Funds v. Tiki Indus., Inc.*, No. 20-CV-492 (DRH)(AKT), 2020 WL 4927430, at *3 (E.D.N.Y. Aug. 21, 2020) (awarding $100 per hour for V&A legal assistants); *All Flooring Sols.*, 2020 U.S. Dist. LEXIS 25506, at *37 (same). The undersigned therefore finds that the reasonable hourly rates for these legal assistants is $100.00.

    2.    <u>Hours Billed</u>

When calculating the lodestar, "the district court should exclude excessive, redundant or otherwise unnecessary hours...." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Courts

reduce the requested hours when a partner performs tasks more appropriate for an associate. *Finkel*, 2020 WL 7249438, at *4. Courts also routinely reduce requested fee awards when attorneys perform tasks like "review[ing] electronic orders and case management orders, [and] fil[ing] documents on ECF . . . [which] should [be] conducted by a paralegal." *Callari v. Blackman Plumbing Supply, Inc.*, 11-CV-3655 (ADS)(AKT), 2020 WL 2771008 at *12 (E.D.N.Y. May 4, 2020), *R&R adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020). "While 'block billing is not prohibited in this Circuit' ... [it] renders it difficult to determine whether, and/or the extent to which, the work done by [the] attorneys is duplicative or unnecessary." *Callari*, 2020 WL 2771008, at *14 (quoting *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 277 F. Supp. 2d 323, 325–26 (S.D.N.Y. 2003)) (internal quotations and alterations in original). Courts "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (U.S. 2011). "[T]he court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Callari*, 2020 WL 2771008 at *12.

Plaintiff's time records include a single entry for 2.8 hours of work performed by an unidentified individual, "AG," billed at $265.00. Without any information about who "AG" is, the undersigned recommends that the request for these hours be denied.

As to the remaining records, Plaintiff's counsel request payment for 53.6 hours. (Fee Records at 7.) There is some block billing. (*See, e.g.*, Fee Records at 4, JH entry dated March 25, 2020.) A few entries also appear unnecessary. For example, on December 3, 2019, Harras billed time for "Attention to file re answer and discovery." (Fee Records at 2.) There was no answer or discovery in this matter, and such tasks would more reasonably be performed by a paralegal. There are also several entries related to the first certificate of default, which was mooted by Plaintiffs' filing of an Amended Complaint. (*See* Fee Records at 2-3.) The undersigned also notes that Plaintiffs opted to pursue their alter ego claims against Defendants in this proceeding, rather than amending the complaint in the first-

18

filed matter against All Flooring, which likely led to the duplication of work in drafting and filing the Complaint, requests for certificate of default, the Motion for Default Judgment, and the supporting papers. As a result, a 20% reduction to Plaintiff's requested hours is reasonable. Based on the table below, the undersigned finds that the presumptively reasonable fee is $8,062.00.

| Attorney | Requested Hours | Reasonable Hours | Reasonable Hourly Rate | Presumptively Reasonable Fee |
|---|---|---|---|---|
| AG | 0 | 0 | ------------- | ------------- |
| Support Staff | 6.2 | 4.96 | $ 100.00 | $ 496.00 |
| Marlie Blaise | 29.4 | 23.52 | $ 150.00 | $ 3,528.00 |
| John Harras - Associate | 4.7 | 3.76 | $ 225.00 | $ 846.00 |
| John Harras - Partner | 13.3 | 10.64 | $ 300.00 | $ 3,192.00 |
| **Total** | **53.6** | **42.88** | | **$ 8,062.00** |

    3.    *Costs*

"The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Monge v. Glen Cove Mansion Hosp., LLC*, No. 18-CV-7229 (SJF)(SIL), 2020 WL 1666460, at *9 (E.D.N.Y. Apr. 2, 2020) (quoting *Volpe v. Nassau County*, No. 12-CV-2416, 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016)). "Filing fees are recoverable without supporting documentation if verified by the docket." *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 219 (E.D.N.Y. 2019). "Process server fees are also recoverable but must be supported by documentation." *Id.* Other costs must be supported by receipts or other documentation. *See id.* (denying undocumented request for photocopies, telephone charges, and mileage, parking, and tolls, among other things).

Plaintiff requests $544.80 in costs, including $400.00 for the filing fee, $140.00 for the service fees, and $4.80 for postage for mailing of the amended complaint. (Fee Records at 7.) The filing fee is verified on the docket. (Dkt. 1.) Plaintiff has provided documentation for these costs. (Fee Records at 7.) The undersigned finds the requested costs of $544.80 to be reasonable.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that Plaintiffs' motion for default

judgment be granted, with the following relief: (1) that a judgment be entered holding Universal Stone jointly and severally liable with All Flooring, as alter egos of each other, for the judgment entered in *Trs. of the Local 7 Tile Ind. Welfare Fund, et al. v. All Flooring Solutions, LLC*, 19-cv-00126 (ENV)(RLM) (E.D.N.Y.) in the amount of $593,630.92, plus post-judgment interest from March 24, 2020; (2) that Plaintiffs be awarded attorneys' fees of $8,062.00 and costs of $544.80 for work in this matter, jointly and severally against Defendants; (3) that Defendants be ordered to submit to an audit of their books and records for the period from January 1, 2017 through the present; and (4) that Plaintiffs be granted leave to seek recovery pursuant to any further delinquencies identified in the audit.

Plaintiffs are directed to serve this Report and Recommendation on Defendants forthwith and file proof of service on the docket by March 16, 2021. Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

                                        **SO ORDERED:**

                                      *Peggy Kuo*
                                      PEGGY KUO
                                      United States Magistrate Judge

Dated:    Brooklyn, New York
             March 13, 2021